## JOHNSON *v.* CRANE.

The partial payment of a note by an indorser on the day of its maturity, is in law a waiver of demand and notice, which avails for the benefit of any party who, by paying the remainder, becomes entitled to call upon him for indemnity.

An indorser of negotiable paper undertakes by such indorsement to pay the same if the maker fail to do so upon due diligence used, and such being the legal effect of the instrument, it shall not be varied or contradicted by parol evidence that he and his subsequent indorser became such for the accommodation of the maker, and thereby equally liable as co-sureties.

A subsequent indorser may recover on the note which he has paid, either upon a count for money had and received, or a special count upon the indorsement, whether the two are indorsed for the accommodation of the maker or not.

ASSUMPSIT. The writ was dated January 18, 1842. The first count is upon a promissory note for eight hundred dollars, dated April 28, 1841, signed by one George Raynes, payable to the defendant or order in six months and grace ; indorsed by the defendant, and subsequently by the plaintiff as second indorser. One count contains allegations that the note was " afterward, to wit: on October 31, 1841, presented to said Raynes, and a demand made on him, and notice thereof given to said Crane." The second count in the declaration was for money paid, laid out and expended ; and the third count was for money had and received.

Under these counts the plaintiff offered a specification setting forth his claim for the sum of $400, paid at the request of Crane, at the Rockingham Bank, with interest thereon.

The note declared on was in evidence, and it appeared that it was made for the accommodation of Raynes, and was indorsed before it was discounted, by Crane and by Johnson, to enable Raynes to raise money, and upon the

note being discounted Raynes took the money to his own use.

On the 29th day of October 1841, the Rockingham Bank, with which the note declared on had been left for collection, sent notice to Raynes that the note was about to become due. On the 30th of October 1841, which was Saturday, Crane and Johnson paid the note at the bank in the presence of each other, each paying $400. At the payment, Crane claimed to keep the note after it was paid; but the cashier of the bank stated to the parties that the note belonged to Johnson to keep, he being second indorser. At his suggestion, and with the consent of the parties, he made on the back of the note this memorandum : " The within note paid this day at the Rockingham Bank, four hundred dollars by Hosea Crane, and four hundred dollars by Jeremiah Johnson. J. S. P.," Cashier;" and Johnson took the note. There was no evidence that on said October 30 a demand was made on Raynes for the payment of the note and notice given to either indorser, other than appears above.

On and before October 11, 1841, Raynes possessed personal property to a considerable amount, which previously to October 29, 1841, was attached on sundry writs, and afterward sold on execution. Since that time Raynes has possessed very little property.

The defendant introduced evidence tending to show an agreement between himself and Johnson to pay the note, equally sharing the loss.

Evidence was also offered by the plaintiff, tending to show that Crane, after the payment of the note, offered to give Johnson some shares in a factory, which Raynes had transferred to him, if he would take them ; and Johnson said he would not take the shares for the $400.

This state of facts was referred to the jury under the direction of the court, by consent of the parties, upon the following question :

---

Johnson *v.* Crane.

---

"Was the $400 paid by Johnson, paid by the request of Crane, or was it a mutual agreement each to be liable for and pay equal shares?"

The jury found that "The $400 was paid by Johnson at the request of Crane;" upon which a general verdict was taken by consent in favor of the plaintiff, subject to the opinion of the court, for four hundred twenty-one dollars and sixty cents.

The defendant moves to set aside the verdict, because it is not sustained by any evidence of a direct promise by Crane to pay Johnson the sum claimed, or a special request by Crane for Johnson to pay the same, and because the evidence of an implied promise or request is insufficient to be submitted to the jury upon which for them to found a verdict; and further, because it is a question of law whether or not, upon the facts proved, there was an implied promise on the part of Crane to pay Johnson the sum claimed.

The plaintiff further claimed to recover upon the note as holder against the indorser, and insisted that the treatment of the note by Crane, and part payment of it by him on the day it became due as above stated, were a waiver of demand for payment upon Raynes, and of any further notice to himself, the said Crane, the indorser.

Judgment was to be entered on the verdict, or the same was to be set aside, and a new trial granted, according as the opinion of this court should be on the foregoing case.

*Emery*, for the defendant. The parties stood either in the light of sureties or indorsers; the question is, which?

The courts of the several States do not agree as to the effect of a simultaneous indorsement by more than one, when the act is for the accommodation of another party to the note. *Talcott* v. *Coggswell*, 3 Day, 512. Whether the parties were successive or joint indorsers was left to the jury.

Johnson *v.* Crane.

United States and Massachusetts courts have held otherwise, and that all indorsers of accommodation paper hold the same rights and are subject to the same liabilities with other indorsers.   3 Pet. U. S. 470 ; 5 Cranch 49 ; 7 Johns. 361.

Courts have authority to set aside a verdict when manifestly against law.   18 Pick. 13.   Or when manifestly against the weight of evidence.  1 Met. 221; 3 Shepley 70 ; 15 Pick. 294.

We say that the verdict is against the weight of evidence.   There is no evidence of a request by the defendant to the plaintiff to pay the money for him.   And we deny that the plaintiff ever paid the money for the defendant.

Demand and notice are indispensable as a condition precedent to the right of an indorser to recover.   2 N. H. 159 ; 3 ditto 14, 346 ; Bailey on Bills 195–6–7 ; Stark. on Ev. 234, 235.

Whatever was paid was voluntarily paid.   It was paid by the plaintiff before the other party had been made liable by demand and notice.   By paying the part, the defendant waived demand and notice only *pro tanto.* *Vaughan* v. *Fuller*, Strange 1246 ; 3 Camp. 107.

Waiver of notice is not a waiver of demand.   11 Wend. 633 ;  6 Mass. 524 ;  5 Shepley 16 ;  do. 50.

The question is in this State one of law, whether there has been a waiver.   3 N. H. 346.

*Hatch,* for the plaintiff.

Woods, J.   George Raynes made his note for eight hundred dollars, payable to the defendant or his order in six months.   Grace was therefore to be added, the last day of which falling upon the Sunday, the note became due on the day preceding.

The note having been indorsed by the defendant and

the plaintiff in succession, was at the time of its maturity held by the Rockingham Bank, to whose counter these parties repaired at that time, and paid each one half of it. This transaction rendered it wholly unnecessary and nugatory for the bank to make a demand upon the maker of the note, and to give notice of its dishonor to either of these indorsers. The only object the bank could possibly have in so doing, was to charge the indorsers, and fix upon them the liability to do an act which they had already performed. The payment of the note by these parties was in the strongest sense a waiver of their several rights to require of the bank to make a demand upon the maker, and to give notice to the indorsers of its dishonor; and indeed rendered it impossible for that body or its agents to perform those acts with any legal effect, being no longer entitled as holders of the note, to receive payment of the maker upon such supposed demand, or otherwise.

According to several authorities a partial payment of the note would have had the same effect, since it would have admitted the liability of the party, and would have signified in plain terms his intention to dispense with a condition instituted for his own benefit; and, moreover, that he already was possessed of the knowledge that the maker had not paid the note, and was content to act upon that knowledge, however derived, without insisting upon its being communicated by the parties whose particular interest and duty required them to make that communication. The case of *Vaughan* v. *Fuller*, Strange 1246, is directly to the point, that such partial payment is sufficient to dispense with proving a demand upon the maker of the note. So that if this action had been brought by the bank instead of the present plaintiff, the defendant would by his partial payment be concluded to have waived the proof of a demand upon the maker. So, also, *Hosford* v. *Wilson*, 1 Taunt. 12.

The note then having been paid in equal parts by plaintiff and defendant, was taken by the former, and in an action brought by him upon it, the question arises, whether the facts to which we have adverted are evidence in his favor, as they would have been in favor of the bank in the supposed case of a suit brought by it against the same party, of his waiver of the demand and notice.

It is an elementary principle of the law relating to negotiable paper, that demand and notice by the holder of a note or bill, will avail and enure to the benefit of all the prior parties to it, whose rights depend upon a demand and notice; and the maker and each indorser are held thereby, as in favor of any subsequent party, the same as if such subsequent party had himself held the paper, and made the requisite demand. A party to a note is conditionally liable upon it to all subsequent parties; and the condition is, a seasonable demand and notice by the party holding it at the time it falls due. That condition being complied with, the liability of all the prior parties attaches, and having once attached and become absolute, nothing more is requisite for its continuance. And it would seem, that it can make no difference whether that liability has become fixed by an actual compliance with the conditions on the part of the holder of the paper, or by a waiver of them by the party for whose benefit they are designed, and who is sought to be charged.

Upon the face of the instrument, and disregarding for the present the argument that is urged from the fact that the parties were accommodating indorsers, they were liable in succession as their names appeared upon the back of the note. Being so liable, the defendant paid one half of the note, and the plaintiff paid the other half, and thereby succeeded to the position and the rights of the party who could have required him to do so. Whatever inference could justly have been derived from the part payment made by the defendant, whether of law or of

fact, was as available to one of these parties as to the other, and it is impossible to distinguish the positions of the two in that respect.

The question then occurs, are they, as the form of the instrument imports, to be regarded as successive indorsers; or is the fact, that they were indorsers for the mere accommodation of the makers, to be considered as evidence that they were joint indorsers and to be liable as co-sureties only, in the event of the default of the maker of the note? The import of the writing itself is, as has been suggested, plain; and by the ordinary rule of evidence, is not to be contradicted by verbal explanations of the intentions and meaning of the parties upon becoming parties to it. And the authorities justify the application of that rule of evidence to this particular case.

*Church* v. *Barlow,* 9 Pick. 547, was an action by a subsequent against a prior indorser; and the defence here suggested was set up. But the court were of the opinion that such was an entirely incorrect view of the transaction, and that if it prevailed, would greatly tend to impair the credit and check the circulation of indorsed negotiable instruments.

"The general rule of law," the courts say, "is, that in regard to negotiable instruments, a consideration is implied in law, not only as between the promisor and promisee, but also as between each indorser and indorsee. Another rule familiar to every lawyer and merchant, and of universal application, is, that any indorser who may be called upon to pay, may look to his immediate indorser, or to either of the prior parties, for an indemnity for the whole amount thus paid; and that every indorser is conditionally liable to pay, in case of the failure of the maker or acceptor; that is, upon the conditions that the bill or note is presented to the acceptor or maker when due, and if not paid, that such indorser shall be seasonably notified of its non-payment. By the fact of indorsement, the indorser

admits a consideration equal to the value of the bill; an admission by which he is bound. He takes upon himself the conditional obligation of the indorser, and that only. It follows of course, that he is entitled to all the privileges and immunities of an indorser, one of which is, to have a remedy over for the whole amount, against either of the prior parties. To this, each and every one, by the fact of indorsement, is by the law considered as assenting. The consequence therefore is, that the rights and duties of the several parties to an accommodation note or bill of exchange are the same as upon those which are denominated business notes; such being the legal effect of the contract into which they respectively enter, by becoming such parties."

This doctrine is fully sustained by the case of *McDonald* v. *Magruder*, 3 Peters S. C. 470. In the opinion of the court, Chief Justice Marshall says, "The first indorser undertakes that the maker shall pay the note, or that he, if due diligence be used, will pay it for him. This undertaking makes him responsible to every holder whose name is on the note subsequent to his own, who has been compelled to pay it." This was an attempt of a prior indorser to recover of a subsequent one an aliquot part of a sum which he had paid on a note, which the parties had indorsed at the request of the drawer. Neither of them received any consideration for so doing, and each indorsing without any communication with the other.

*Brown* v. *Mott*, 7 Johns. 361, is a case to the same effect.

From all the authorities which touch the question, it is clear that this defendant stands in the position of a prior indorser with respect to the plaintiff, and subject to all the liabilities, as well as entitled to all the exemptions pertaining to parties so situated in ordinary cases; and it makes no difference that they were accommodating indorsers.

The defendant, therefore, having waived his right to insist upon demand and notice, by paying part of the

note, and the plaintiff having, as bound by his undertaking as indorser, paid the part left by the defendant unpaid, the question which now presents itself is, whether the plaintiff can recover upon either of the counts in his writ. He has declared as indorser and added the usual money counts.

It is a perfectly well settled rule of law, that an indorser of a negotiable paper, by paying and taking it up, becomes the holder of it for all purposes, and the proprietor of it. He is restored to the original right under which he held it before he indorsed it, and is of course entitled to declare upon it as indorsee or payee, if he at first received it as such.

And it is well settled, that an indorsee may recover against an indorser, in an action for money had and received. As between each party to a negotiable instrument, and every other party, there is sufficient privity, and such a contract is presumed to be a cash transaction, and money is presumed to have passed at the making of it, and at each indorsement; and each party liable to pay, is held responsible accordingly for money had and received, to any party, who is for the time being the holder of the note, and entitled to recover. *Ellsworth* v. *Brewer*, 11 Pick. 316, and cases there cited.

Nor is it necessary for the subsequent indorser, in order to entitle himself to recover of any prior party to the note, either as indorsee or for money had and received, to prove more than a payment of the amount to the holder, and the liability of such indorser to the holder, by reason of a demand and notice or a waiver thereof. By such payment or taking up of the note, he is restored, as has been remarked, to his former condition as indorsee, and subrogated to the rights of his indorsee of whom he has taken the note.

Such being the unquestionable rights and liabilities of the parties to notes and bills of exchange growing out of their mutual relations, it is entirely clear that in the case

under consideration, the plaintiff is entitled to recover of the defendant the half of the note which he paid, and is consequently entitled to

*Judgment on the verdict.*